**20 MAG 00554**  ORIGINAL

Approved: _____
JESSICA GREENWOOD/SHEB SWETT
Assistant United States Attorneys

Before:  THE HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - - - x
                                         :   SEALED COMPLAINT
UNITED STATES OF AMERICA                 :
                                         :   Violations of
     - v. -                              :   18 U.S.C. §§ 1343
                                         :   and 2
MICHAEL ACKERMAN,                        :
                                         :   COUNTY OF OFFENSE:
                    Defendant.           :   NEW YORK
- - - - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   JOHN RODRIGUEZ, being duly sworn, deposes and says that he is a Special Agent with Homeland Security Investigations ("HSI"), and charges as follows:

COUNT ONE
(Wire Fraud)

   1. From at least in or about May 2018 up to and including at least in or about December 2019, in the Southern District of New York and elsewhere, MICHAEL ACKERMAN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, ACKERMAN lied to investors and potential investors in an investment fund in order to induce investors to wire money into the investment fund.

   (Title 18, United States Code, Sections 1343 and 2.)

   The bases for my knowledge and for the foregoing charge are, in part, as follows:

2.      I am a Special Agent with the HSI. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, on my conversations with other law enforcement officials, and on my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Background of the Investigation

3.      Since at least in or about October 2019, HSI has been investigating MICHAEL ACKERMAN, the defendant, for his involvement in a cryptocurrency investment scheme involving Q3 I, LP and related "Q3" entities. The Q3 entities were part of an investment scheme in which ACKERMAN and his two co-founders ("Founder-1" and "Founder-2," respectively and, together with ACKERMAN, the "Founders") would purportedly invest and trade in cryptocurrency on behalf of investors into the Q3 entities (the "Q3 Investment Scheme").

4.      HSI has been investigating allegations that ACKERMAN, directly and through others acting on information provided by ACKERMAN, lied to investors concerning the amount and location of investor funds held by Q3.

## Background of Q3

5.      Based on my review of records obtained from victim-investors in the Q3 Investment Scheme, I have learned, among other facts, that in or about 2019, Founder-2 described Q3 I, LP as follows, in substance and in part:

> Q3 I, LP is a cryptocurrency trading company founded in 2017 that strictly trades the volatility of Cryptocurrency. I founded this company with two other financial analysts both of who worked on the floor of NYSE, one of which is an ex-hedge fund manager. We use very complex algorithms that trade in and out of coins thousands of times a day. On average we make about 0.5% daily on invested income. This comes out to roughly 15% total profit monthly. Profits are continuously

2

> reinvested, thus compounding continuously. These returns have been consistent since August 2017. Algorithms are managed 24/7 by our chief trading officer, Michael Ackerman. Currently we have over $236M Assets Under Management.
>
> . . .
>
> Distribution is simple: 50% return on your profit at end of each fiscal year. The General Partners- myself and the other two founders take 50% of all profit. There are a few costs of operations (minor salaries, an office, licensing fees and other costs). At the end of year you get all of your initial investment back plus 50% of what your investment made.
>
> . . .
>
> It's been a winning strategy that has been tested through every peak and trough of this market over the last two years without failing. We hope you are interested in our endeavor. Please feel free to call with any questions.

6. Based on my review of a Subscription Booklet for Q3 obtained from a victim-investor, I have learned, among other facts, that potential investors in Q3 were instructed to wire their capital commitments to Q3 at a particular bank account at Signature Bank (the "Q3 Signature Bank Account") and as part of those wire instructions were given a "Bank Address" on 565 Fifth Avenue in New York, New York.

7. Based on my review of bank records obtained from Signature Bank for the time period of the opening of the Signature Bank Account through in or about November 2019, I have learned, among other facts, that:

   a. The Q3 Signature Bank Account was opened in or about August 2018 in the name of Q3 I, LP.

   b. Michael ACKERMAN, the defendant, Founder-1, and Founder-2 are authorized signers on the Q3 Signature Bank Account.

3

c.  Between at least on or about September 14, 2018 and on or about October 31, 2019, the Q3 Signature Bank Account received deposits by incoming checks and wire transfers from apparent Q3 investors, including but not limited to wire transfers directed to Signature Bank on Fifth Avenue in New York, New York and wire transfers from Bank of America NYC.

d.  Between at least on or about November 2, 2018 and on or about September 24, 2019, the Q3 Signature Bank Account was used to make check payments to apparent Q3 investors, including on checks stamped with the name and address of Signature Bank on Fifth Avenue in New York, New York.

8.  Based on my review of text messages obtained from Founder-2, I have learned, among other facts, that on or about December 7, 2019, Founder-1 sent a text message to Founder-2 calculating the total "Q3 investor capital" from 2018 and 2019 to be $31,577,290.95.

ACKERMAN Claims That Q3's Trading Balance is Growing

9.  As noted in paragraph 5 above, MICHAEL ACKERMAN, the defendant, is purportedly the chief trading officer of Q3 and manages its trading algorithm.

10. As detailed in paragraph 11 below, I have learned, among other facts, that in or about 2018 and 2019, ACKERMAN claimed to Founder-1 and Founder-2 that Q3's trading account at a cryptocurrency trading platform ("Platform-1") was increasing in value. As evidenced by the information detailed in paragraph 12 below, Founder-1 used the information provided by ACKERMAN with respect to the trading balances available to Q3 to calculate the rate of return that Q3 investors were experiencing on their investments and to update investors about the health of the Q3 investment fund.

11. Based on my review of text messages and attachments obtained from Founder-1, I have learned, among other facts, that beginning at least as early as in or about October 2018, and continuing through at least as late as in or about December 2019, MICHAEL ACKERMAN, the defendant, sent screenshots of the available balance of a trading account on Platform-1 (the "Platform-1 Account") to Founder-1 and Founder-2. These text messages include but are not limited to the following:

4

a. On or about October 6, 2018, ACKERMAN sent a text message to Founder-1 attaching a screenshot purporting to show a tradable balance of $18,724,389.904751 USD in an unidentified Platform-1 account. Although this screenshot excluded the portion of the screen that would identify the Platform-1 account number, I believe based on my review of later screenshots sent by ACKERMAN that the account purportedly depicted in this screenshot is likely the Platform-1 Account

b. On or about December 4, 2018, ACKERMAN sent a text message to Founder-2 attaching a screenshot purporting to show a tradable balance of $29,329,856.95278 USD in the Platform-1 Account.

c. On or about January 1, 2019, ACKERMAN sent a text message to Founder-2 attaching a screenshot purporting to show a tradable balance of $35,049,373.707592 USD in the Platform-1 Account. In the body of the text message, ACKERMAN wrote, in substance and in part: "35,049,373.707592."

d. On or about May 21, 2019, ACKERMAN sent a text message to Founder-1 and Founder-2 stating: "GENTLEMAN…I SUBMIT TO YOU A NEW REALM OF SUCCESS." The text message also attached a screenshot that purported to show a tradable balance of $100,101,931.38479 USD in the Platform-1 Account.

e. On or about September 1, 2019, ACKERMAN sent a text message to Founder-2 attaching a screenshot purporting to show a tradeable balance of $181,930,351.53628 USD in the Platform-1 Account.

f. On or about October 1, 2019, ACKERMAN sent a text message to Founder-2 attaching a screenshot purporting to show a tradeable balance of $ 219,091,823.29363 USD in the Platform-1 Account.

g. On or about October 4, 2019, Founder-1 sent a text message to ACKERMAN and Founder-2 attaching a document with the header "September 2019" and "Q3 Update," which is signed with Founder-1's initials and appears to be an update to Q3's investors. The document states, in substance and in part, "[W]e are thrilled to report an astounding September return of 17.27%, which is our best tally yet. . . . We remain steadfast and continue our efforts to emphasize our mantra of making a great deal of money for our small group rather than a small amount for the masses."

h.  On or about November 4, 2019, Founder-1 sent a text message to ACKERMAN and Founder-2 attaching what appears to be a copy of October 2019's update to Q3 investors, which is signed with Founder-1's initials. The document states, in substance and in part: "Upon being informed of the October performance figures on a call, [an individual previously described as "an esteemed colleague"] exclaimed 'The Q3 October performance return is **18.13%**, what else is there to say?" . . . Thank you all again for your continued trust and faith in our successes. . . . Happy Thanksgiving to all!"

i.  On or about November 30, 2019, ACKERMAN provided Founder-1 attaching a screenshot (the "November 30, 2019 Screenshot") purporting to show a tradable balance of $310,424,288.4041 USD in Platform-1 Account.

j.  On or about December 6, 2019, ACKERMAN sent Founder-1 a text message with a screenshot (the "December 6, 2019 Screenshot") showing a balance of $315,361,358 USD in the Platform-1 Account.

ACKERMAN Misrepresents the Fund Balance to Q3 Investors

12. Based on my review of emails obtained from Founder-1, I have learned, among other facts, that:

a.  At approximately 2:22 p.m. on or about December 13, 2019, MICHAEL ACKERMAN, the defendant, sent an email to certain Q3 investors. In substance and in part, the email apologized for "endless delays the past month" and described a health issue that would cause ACKERMAN to "be spending a great deal of time in New York aggressively pursuing" treatment. ACKERMAN further stated, in substance and in part, that "we have suspended trading activity for the month's [sic] of December and January. We are in the midst of reconciling our books and waiting on approval from one of our larger Exchanges for a large scale removal of funds."

b.  At approximately 2:50 p.m. on or about December 13, 2019, Founder-1 sent an email to certain Q3 investors, stating:

> As you may be aware, early last week Michael Ackerman was hospitalized. He was released from the hospital on Tuesday, December 3. [Founder-2] and I went to his home in Ohio to visit him. We became concerned after speaking with his nurse and then observing his physical condition. We gained access to his computer and

>discovered what appeared to be a very large discrepancy between the assets Michael had been reporting to us and the balance in the trading account we expected to house the assets. Michael assured us that the assets were moved to a more secure account but he refused to provide us access to that account. Last Friday morning he sent a screen shot showing the correct amount of assets in a trading account. We have been unable to verify the accuracy of this screen shot. We are taking steps to investigate the discrepancy and have alerted the SEC office in Miami, Florida. In addition, we have directed Michael to cease all trading. We will provide a further update when we have more definitive information to report.

      c.    At approximately 5:25 p.m. on or about December 19, 2019, Founder-1 sent an email to certain Q3 investors, stating:

>We understand that Michael has advised various investors that he has been attempting to get in touch with [Founder-2] and me to facilitate the return of investor funds. He has not in fact made any attempts to contact us to facilitate the return of funds. I did attempt to call Michael today and text him on behalf of Q3 and all its investors to discuss return of funds. He has yet to reply to us. Based on what Michael told us, the Q3 assets are maintained in one or more Platform-1 accounts over which Michael has exclusive control. When we asked him two weeks ago to identify those accounts and provide us access, he refused. That interaction with Michael is what caused us to contact the SEC. There is nothing that [Founder-2] or I can do right now to access those accounts.

<u>ACKERMAN Falsified Evidence of the Platform-1 Account Balance</u>

      13.    Based on my conversations with an employee at Platform-1 ("Employee-1"), and my review of records obtained from Platform-1, I have learned the following facts, among others:

      a.    For the entire year of 2019, the maximum balance that was reached in the Platform-1 Account was approximately $5

million USD – far less than the total investor balance of approximately $31,577,290.95. The maximum balance in the Platform-1 Account was reached in or about August 2019.

      b.    When Employee-1 reviewed the transfer activity from the Platform-1 Account, Employee-1 identified all of the accounts to which funds had been transferred from the Platform-1 Account; none of the accounts that received funds from the Platform-1 Account had the name or a variation of the name "crypto 11."

      c.    Employee-1 has reviewed copies of the November 30, 2019 Screenshot and the December 6, 2019 Screenshot, as well as other screenshots purportedly depicting the balance of the Platform-1 Account, and determined that those screenshots appear to have been altered. Specifically, Employee-1 identified certain indicators that the screenshots are not true images taken from a legitimate Platform-1 account page. For example, Employee-1 identified that: the account balance shown should be horizontally aligned with other text on the same line, but instead is higher or lower than the remaining text; the tradable balance shown in the screenshot is preceded by a "$" symbol, which should not be present; and/or the tradable balance shown in the screenshot is carried out to four decimal places, when that amount should only be carried out to two decimal places.

### ACKERMAN Profited from Q3 Investor Funds

14.    Based on my review of financial records obtained in the course of this investigation, I have learned, among other things, the following:

      a.    On or about July 31, 2019, approximately $500,000 was wired from the Q3 Signature Bank Account to a Chase Bank account held in the name of Michael Ackerman (the "Ackerman Chase Bank Account").

      b.    On or about August 29, 2019, approximately $500,000 was wired from the Q3 Signature Bank Account to the Ackerman Chase Bank Account.

      c.    On or about October 2, 2019, approximately $500,000 was wired from the Q3 Signature Bank Account to the Ackerman Chase Bank Account.

Q3 Investors Relied on ACKERMAN's False Representations About Q3

15. Based on my review of statements made by certain investors in Q3 ("Investor-1" and "Investor-2," respectively), I have learned, among other things, the following:

    a. Q3 investors would receive monthly emails that contained both a letter update from the Founders, as well as a statement of the Q3 trade balance. Investors, including Investor-1 and Investor-2, also spoke regularly with the Founders, including MICHAEL ACKERMAN, the defendant, regarding Q3. ACKERMAN told investors, including Investor-1 and Investor-2, among other things, that Q3 had no more than 10% on any single cryptocurrency exchange in case there was a cyberattack on the exchange. ACKERMAN also stated that he could recoup a 10% loss within two weeks.

    b. Based on the monthly email communications from the Founders, as well as ACKERMAN's direct communications, the investors were induced to invest in the Q3 entities.

        i. For example, Investor-1 made an initial investment of $50,000 in or about May 2018. In or about September 2019, after having received monthly statements reflecting falsely inflated returns, Investor-1 invested an additional $204,000 into the Q3 entities through an investment vehicle.

        ii. Investor-2 initially invested $100,000 in the Q3 entities in or about May 2018. In or about September 2019, after having received representations regarding the falsely inflated returns, Investor-2 invested an additional $125,000 into the Q3 entities, and then invested another $25,000 into the Q3 entities in or about October 2019.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of MICHAEL ACKERMAN, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
JOHN RODRIGUEZ
Special Agent
Homeland Security Investigations

Sworn to before me this
13th day of January, 2020

_____
THE HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK