M2FTACKS

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          20 CR 93 (LTS)
                                           Remote proceeding
5    MICHAEL ACKERMAN,

6              Defendant.

7    ------------------------------x

8                                          New York, N.Y.
                                           February 15, 2022
9                                          10:30 a.m.

10
     Before:
11
                    HON. LAURA TAYLOR SWAIN,
12
                                           District Judge
13

14            APPEARANCES (Via videoconference)

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     JESSICA GREENWOOD
17        Assistant United States Attorney

18   FEDERAL DEFENDERS OF NEW YORK
          Attorneys for Defendant
19   JONATHAN MARVINNY

20

21

22

23

24

25

M2FTACKS

```
1              (Via videoconference, case called)

2              THE COURT:  Thank you, Ms. Ng.

3              Good morning.  My apologies if there are some

4    background noise coming from me.  Let me know, please, if it's

5    making it difficult to hear me and I will mute myself if I can.

6    There is just some construction going on locally.

7              I will now ask counsel to state their appearances,

8    beginning with counsel for the government.

9              MS. GREENWOOD:  Good morning, your Honor, Assistant

10   United States Attorney Jessica Greenwood appearing on behalf of

11   the government.

12             THE COURT:  Good morning, Ms. Greenwood.

13             And counsel for Mr. Ackerman.

14             MR. MARVINNY:  Good morning, your Honor, Federal

15   Defenders of New York by Jonathan Marvinny for Mr. Ackerman,

16   who is also, of course, present.

17             THE COURT:  Thank you.  Good morning, Mr. Marvinny,

18   and good morning, Mr. Ackerman.

19             THE DEFENDANT:  Good morning.  How are you?

20             THE COURT:  I'm well.  How are you doing?

21             THE DEFENDANT:  Good, thank you.

22             THE COURT:  I'm glad to hear that.

23             Would you please state your full name so that the

24   court reporter can hear your voice well?

25             THE DEFENDANT:  Sure, Michael Waldron Ackerman.
```

M2FTACKS

1          THE COURT:  Thank you, sir.

2          I also greet any family members, friends, members of

3     the press or public and colleagues who may be listening in,

4     since this is a public proceeding.  All people who have called

5     to listen in must keep their phones muted at all times, and I

6     also ask that counsel keep their phones muted when they're not

7     speaking.  I remind everyone that, as provided in the Court's

8     standing order, neither recording nor retransmission of any

9     part of this proceeding is permitted.

10          I will be calling on each speaker during the hearing.

11     Each time that you speak, please identify yourself by name for

12     clarity of the record and for the benefit of those who only

13     have audio access.  Please don't interrupt each other or me

14     during the hearing.  If we interrupt each other, it's difficult

15     to create an accurate transcript.  But, as usual, I apologize

16     in advance for breaking the rule because I may interrupt if I

17     have questions.

18          I will give the attorneys an opportunity to make

19     additional comments or ask questions at the end of the hearing,

20     and if anyone has any difficulty hearing me or another

21     participant at any time, please unmute and say something right

22     away.

23          Counsel and Mr. Ackerman, it is important that you

24     always answer any questions with words rather than simply by

25     nodding or making gestures, because even though I can see you,

M2FTACKS

1    the people who are listening in can't see you.

2           Do you understand that, Mr. Ackerman?

3           THE DEFENDANT:  Yes, I do, your Honor.

4           THE COURT:  Thank you.  We're in the midst of the

5    Covid-19 pandemic.  I'm conducting this videoconference, a

6    sentencing hearing, pursuant to the authority provided by

7    Section 15002 of the CARES Act and the standing orders issued

8    pursuant to that act.

9           This hearing has been scheduled at the request of the

10   parties to take place remotely in light of Mr. Ackerman's

11   health conditions and pursuant to the CARES Act provision that

12   such a proceeding may go forward remotely upon a finding that

13   it cannot be further delayed without serious harm to the

14   interests of justice.

15          Mr. Marvinny, would you please explain the factual

16   basis for your request that the sentencing hearing go forward

17   remotely now?

18          MR. MARVINNY:  Yes, your Honor.  We requested this

19   proceeding occur remotely in large part because of

20   Mr. Ackerman's very serious medical condition which makes

21   travel close to impossible.  And, of course, his medical

22   condition and his ability to travel are impacted by the

23   Covid-19 pandemic and the presence of Covid-19 in our country.

24   So for those reasons, we have requested that this proceeding

25   occur remotely.

M2FTACKS

1    I'm not sure if your Honor wants me to address the

2   form that we have transmitted to the Court, but I certainly

3   have discussed with Mr. Ackerman his right to appear physically

4   in person should he so desire, and he has waived that right,

5   and we submitted a form indicating that to the Court.

6    THE COURT:  Thank you.  The form was going to be the

7   next question, but first I will make this finding:  I find for

8   the reasons stated by Mr. Marvinny that the sentencing hearing

9   in this case cannot be further delayed without serious harm to

10   the interests of justice, and that it is necessary to go

11   forward remotely in light of Mr. Ackerman's health conditions

12   and the general dangers presented by the Covid-19 pandemic.

13    And now, as to the form, Mr. Marvinny, you have

14   indicated that you have discussed the waiver of personal

15   appearance form with Mr. Ackerman.  I see, Mr. Marvinny, that

16   you signed the form on Mr. Ackerman's behalf.  Would you

17   explain the factual basis of your understanding that you were

18   authorized to do that and that his waiver is knowing and

19   voluntary?

20    MR. MARVINNY:  Yes, certainly, your Honor.

21    Mr. Ackerman and I spoke by telephone.  I read the

22   form out loud to him over the phone.  I asked him if he was

23   willing to give his consent for his appearance to occur

24   remotely and whether he would authorize me to sign the form on

25   his behalf.  He indicated in the affirmative to both of those

M2FTACKS

1    questions.  I signed the form and sent it back to chambers.

2             I should say also Mr. Ackerman executed a similar form

3    at the time of his guilty plea, so he is familiar with the form

4    and with his rights.

5             THE COURT:  Thank you.

6             Mr. Ackerman, did you hear what Mr. Marvinny just told

7    me?

8             THE DEFENDANT:  Yes, I did, ma'am.

9             THE COURT:  Was that all correct?

10            THE DEFENDANT:  Yes, ma'am.

11            THE COURT:  Thank you.  I find that Mr. Ackerman has

12   knowingly and voluntarily waived his right to appear in person

13   and agreed to proceed with this sentencing hearing by

14   videoconference.  I will endorse the waiver form to indicate

15   the Court's acceptance and I will file it on the record.

16            I have received and reviewed the presentence

17   investigation report, which is dated December 6, 2021,

18   including the recommendation and addendum, as well as defense

19   counsel's February 1, 2022 letter submission which was

20   accompanied by three letters of support from Mr. Ackerman's

21   family members and a friend, four communications from medical

22   professionals concerning Mr. Ackerman's health conditions, and

23   an opinion letter from a physician retained by the defense in

24   this case.

25            I have also reviewed the government's February 10,

M2FTACKS

1    2022 letter submission, and by order dated February 11, 2022,

2    the Court permitted the parties to file redacted versions of

3    their sentencing submissions on the public docket and the

4    complete unredacted submissions have been filed under seal.

5         There was also a consent order of forfeiture that was

6    entered in connection with the change of plea proceeding.

7         Are there any other written submissions that the

8    parties intend me to have considered in connection with the

9    sentencing, Mr. Marvinny?

10        MR. MARVINNY:  Not from the defense, your Honor.

11        THE COURT:  Thank you.

12        Ms. Greenwood?

13        MS. GREENWOOD:  Yes, your Honor.  This morning I spoke

14   to chambers with respect to the transmission of victim impact

15   statements to the Court.  I had understood that those had been

16   transmitted previously, but apparently they were not, so I

17   submitted to the Court this morning a document consisting of

18   short victim impact statements, and I transmitted that by email

19   this morning to chambers and was informed by chambers that that

20   would be communicated to your Honor.

21        THE COURT:  Thank you.  Those came in just as I was

22   signing on, and I looked at them briefly, and I did neglect to

23   mention them.  So for the record, I have also received victim

24   impact statements transmitted under a cover letter of --

25   actually incorporated into a letter dated February 15, 2022,

M2FTACKS

1   from the government, which the government has requested to file

2   under seal, as usual with victim impact statements, which are

3   not filed on the public record.  The application to file those

4   under seal is granted.

5           Mr. Marvinny, have you had an opportunity to review

6   the victim impact statements?

7           MR. MARVINNY:  Yes, your Honor, just briefly, at the

8   same time I think your Honor did.

9           THE COURT:  Thank you.

10          So Ms. Greenwood, you have provided the victim impact

11  statements to us today.  Would you make a more comprehensive

12  statement regarding the government's victim identification and

13  notification activities in connection with this sentencing?

14          MS. GREENWOOD:  Yes, your Honor.  The vast majority of

15  the victims in this case are represented by legal counsel.

16  They have been engaged in a number of lawsuits concerning this

17  matter civilly as well as involving one of the other

18  participants in the cryptocurrency scheme's bankruptcy.  So we

19  have been primarily communicating through counsel and have been

20  using them to assist us in identifying additional victims who

21  are not represented by them in order to ensure that everyone

22  has notification of the sentencing today.

23          I have been in communication with those attorneys in

24  order to communicate the availability of the opportunity for

25  the victim impact statement and the nature of this proceeding

M2FTACKS

1    today.  And in addition, we have had a number of unrepresented

2    victims reach out to us and have been in touch with them about

3    both this proceeding and the restitution process to follow.

4            THE COURT:  And did any of the victims request to be

5    able to speak today?

6            MS. GREENWOOD:  None requested to speak orally at the

7    sentencing, your Honor.  The victim impact statements are the

8    response that you received inviting them to speak.  Although we

9    did provide to them the public dial in, and so a number of them

10   may or may not be on the line today.

11           THE COURT:  Thank you.  I greet any who may be on the

12   line, and, as I said, I have reviewed, albeit briefly, the

13   statements that were provided by the government today.

14           Mr. Marvinny, have you read the entire presentence

15   report and the submissions and discussed them with

16   Mr. Ackerman?

17           MR. MARVINNY:  Yes, your Honor.

18           THE COURT:  Mr. Ackerman, have you yourself reviewed

19   the entire presentence report?

20           THE DEFENDANT:  Yes, I have, your Honor.

21           THE COURT:  And have you discussed the presentence

22   report and the submissions with Mr. Marvinny?

23           THE DEFENDANT:  Yes, I have.

24           THE COURT:  Mr. Marvinny, does the defense have any

25   objections or other issues with respect to the content of the

M2FTACKS

1   report that you wish to address?

2          MR. MARVINNY:  Nothing as to the presentence report,

3   your Honor.

4          THE COURT:  Ms. Greenwood, does the government have

5   any objections or other issues with respect to the content of

6   the report that you wish to address?

7          MS. GREENWOOD:  No, your Honor.

8          THE COURT:  Ms. Greenwood, is the government applying

9   to have Mr. Ackerman credited with the third point for

10  acceptance of responsibility?

11         MS. GREENWOOD:  Yes, your Honor.

12         THE COURT:  That application is granted.  And I note

13  that the third point is taken into account in the computations

14  in the presentence report.

15         Ms. Greenwood, what is government's position as to

16  restitution?

17         MS. GREENWOOD:  Yes, your Honor, the government would

18  seek to schedule a restitution hearing 90 days from today, the

19  date of sentencing, to finalize the restitution amount and

20  schedule.

21         THE COURT:  Is there any objection to that request,

22  Mr. Marvinny?

23         MR. MARVINNY:  No objection.

24         THE COURT:  Ms. Ng, would you give us a restitution

25  hearing date 85 days out, so if we have to sort out any

M2FTACKS

1   paperwork or anything, we're not, on the 90th day, figuring

2   that out?

3           DEPUTY CLERK:  Okay, Judge.

4           We have May 11, 2022 at 11:00 a.m.

5           THE COURT:  Mr. Marvinny, is that a date, which is

6   essentially a holding date, but nonetheless a date that would

7   be available for you?

8           MR. MARVINNY:  Yes, your Honor.

9           THE COURT:  Thank you.

10          And Ms. Greenwood, does that date work for you?

11          MS. GREENWOOD:  Yes, your Honor.

12          THE COURT:  Thank you.  The restitution determination

13  in this case is deferred to a hearing scheduled for May 11,

14  2022 at 11:00 in the morning.

15          And as to forfeiture, Ms. Greenwood, have we done

16  everything that is necessary at this stage with the entry of

17  the consent preliminary order of forfeiture, which is at Docket

18  Entry No. 57, and which will be referenced in the judgment and

19  commitment form that I prepare in connection with today's

20  sentencing?

21          MS. GREENWOOD:  Yes, your Honor.  I would note one

22  thing.  We did, in preparing for sentencing and moving forward

23  on forfeiture, determine that the reference to the law

24  enforcement agency in possession of the seized property in the

25  consent preliminary order of forfeiture omits reference to the

M2FTACKS

1    FBI -- or sorry, to Homeland Security Investigations, which is

2    in possession of a significant amount of the property.  So my

3    understanding is we're going to submit a revised order that

4    just reflects the proper seizing entity for some of the items

5    reflected in the consent order.  But other than that, yes, your

6    Honor, the consent order is ready to go.

7            THE COURT:  And so would it still be appropriate for

8    me to reference this consent order of forfeiture in the

9    judgment, understanding that that order itself may be amended

10   later?

11           MS. GREENWOOD:  I think so, your Honor.  Given the

12   nature of the change being what it is, I think that's

13   appropriate.

14           THE COURT:  Very well then.  And so before I ask you

15   to make your general sentencing statements, I want to inform

16   counsel that I am considering a departure provision in the

17   sentencing guidelines at Section 5H1.4.  And so notwithstanding

18   the disclaimer of departure arguments in the plea agreement, I

19   am directing you to address the potential applicability of the

20   sentencing departure provision found at Section 5H1.4 of the

21   guidelines, which provides that physical condition or

22   appearance, including physique, may be relevant in determining

23   whether a departure is warranted if the condition or

24   appearance, individually or in combination with other offender

25   characteristics, is present to an unusual degree and

M2FTACKS

1  distinguishes the case from the typical cases covered by the

2  guidelines.  That guideline provision further states that an

3  extraordinary physical impairment may be a reason to depart

4  downward, e.g., in the case of a seriously infirm defendant

5  home detention may be as efficient as and less costly than

6  imprisonment.  So that is one topic that I would invite you to

7  address.

8         In addition, if I find that a non-custodial sentence

9  is appropriate, I'm considering imposing it as a sentence of

10  probation, which would permit me to impose supervision for up

11  to five years, rather than the statutory supervised release

12  limit of three years.  And a probation sentence would also

13  permit me to resentence Mr. Ackerman should he violate his

14  terms of release and/or whether or not he recovers physically.

15  So that is something else that I wanted counsel to be aware of

16  before you begin your sentencing remarks.

17         And so Mr. Marvinny, whenever you are ready, I call on

18  you first to make your remarks.  Thank you.

19         MR. MARVINNY:  Thank you, your Honor.  I appreciate

20  the insights from the Court as to what the Court would like us

21  to address.

22         I have given some thought to the departure provision

23  at 5H1.4, although obviously haven't briefed it or raised it

24  affirmatively because, as the Court is aware, we have a plea

25  agreement.  But nonetheless, with the Court's invitation to

M2FTACKS

1    address it, I think it's probably certain that Mr. Ackerman's

2    condition satisfies the plain language of 5H1.4, that is,

3    Mr. Ackerman's physical impairment is in fact extraordinary as

4    the guideline provides, and is present to an unusual degree

5    that distinguishes his case from typical cases covered by the

6    guidelines.

7         In a nutshell, Mr. Ackerman's physical condition is

8    extremely dire, so far outside of the norm, so far out of the

9    mainstream that I think it qualifies under 5H1.4.  I think that

10   a departure is readily applicable here.  Our position is

11   whether the Court counts the sentence as a departure or as a

12   variance or some combination of the two, the ultimate result

13   should be the same, which is that Mr. Ackerman should not be

14   incarcerated.

15        We said in the first paragraph of our submission, your

16   Honor, that this case is exceptional, and it truly is.  It is

17   an incredibly serious crime that no one would deny the severity

18   of.  There was an exceptionally high loss amount and it was a

19   fraud that Mr. Ackerman understands he must pay for.

20        At the same time, Mr. Ackerman's medical condition is,

21   again, so exceptionally dire that it actually warrants a

22   non-incarceratory sentence.  So we filed the majority of our

23   submission under seal, but the fact is I'm happy to address

24   today that Mr. Ackerman suffers from end stage liver and kidney

25   disease.  He has been diagnosed as terminally ill, meaning he

M2FTACKS

1   has less than twelve months to live, and that, frankly, your

2   Honor, is probably under the best of circumstances.

3   Mr. Ackerman's only chance for survival is transplants of both

4   organs.  He has a very high MELD score, which means that his

5   condition actually has gotten worse in some sense, but that

6   he's more hopeful than ever he's finally going to receive a

7   transplant.

8         We submitted, your Honor, reams of medical records to

9   the probation office, to the independent expert that we

10  retained.  And I should say to your Honor, to the government as

11  well, we are not trying to hide the ball in any sense here.

12  Mr. Ackerman's condition is well documented.  It is serious.

13        And remarkably, your Honor, the probation office,

14  after considering the material, has also recommended a

15  non-incarceratory sentence.  Given the gravity of the offense

16  here, I think the Court knows how truly extraordinary that

17  recommendation from probation is, and I think it speaks to the

18  real serious nature of Mr. Ackerman's care and what it

19  requires.  Probation has said, and I echo it entirely, that

20  even a short term of imprisonment in a medical center, in a BOP

21  medical center could potentially be a lethal sentence given

22  Mr. Ackerman's needs.  And I think that's accurate and it's not

23  an overstatement.  And above and beyond that, your Honor,

24  probation cites the cost, the exorbitant cost and the burden it

25  would impose on the BOP to care for Mr. Ackerman.

M2FTACKS

1    I want to add one more consideration for that, which

2    is even if in some nominal sense the Bureau of Prisons would

3    take the position that it could treat Mr. Ackerman because it

4    has Level 4 medical facilities, et cetera -- and I know the

5    Bureau of Prisons often takes a position that it can treat any

6    defendant -- the fact is whatever treatment BOP might be able

7    to provide, it will not be close to the care that Mr. Ackerman

8    receives now, and that is a significant factor.  Mr. Ackerman

9    has teams of doctors, nurses, social workers, hospital

10   administrators at both the Cleveland clinic and at the

11   University of Wisconsin, two transplant centers where

12   Mr. Ackerman is listed for transplants.  They provide him

13   exceptional care, and to take him away from the care of those

14   doctors would be beyond harmful.

15   Equally important, no less important is the fact that

16   Mr. Ackerman receives daily care, really 24-hour care from his

17   wife Stacey, who essentially has left her job and his been

18   Mr. Ackerman's full-time caretaker for many, many years.  I

19   described in my submission a typical day in Michael and Stacey

20   Ackerman's life, and it is bleak, to say the least.  It

21   involves an extraordinary amount of care from Stacey, and it's

22   remarkable what she has done and will continue to do for

23   Mr. Ackerman.  But taking him away from her and his team of

24   doctors, it's just more than is necessary here.

25   Your Honor, the other factors that the Court is to

M2FTACKS

1    consider, the other sentencing factors –– although typically a

2    sentence like this might warrant incarceration here –– in

3    combination with his medical conditions, support a

4    non-incarceratory sentence.  Although there was a high loss

5    amount, it's still a non-violent first offense for

6    Mr. Ackerman.  It was committed at a time when he was abusing

7    alcohol and other substances and was in deep, deep depression

8    and suffering from other mental health conditions.  He's been

9    diagnosed as having bipolar disorder, and that was certainly

10   kind of at its peak when Mr. Ackerman was committing his

11   offense.

12        He also, your Honor, is –– and this is not

13   insignificant –– is exceptionally remorseful and self aware of

14   what he has done.  During his allocution to the Court at the

15   time of his guilty plea he said his offense was motivated by

16   greed, and that he is remorseful.  And that is a position that

17   Mr. Ackerman told the probation department as well.

18        So none of these other kind of other considerations of

19   sentencing, incapacitation, deterrence, none of those are

20   really better addressed by an incarceratory term here.

21   Mr. Ackerman is no threat to break the law again, and he's

22   deeply remorseful for his crimes.

23        Moreover, there are a raft of collateral consequences

24   that attach to Mr. Ackerman's conviction, including very steep

25   financial penalties.  There are proceedings against

M2FTACKS

1   Mr. Ackerman by the SEC, the CFTC, and by the individual

2   private victims of the offense.  Mr. Ackerman is going to be

3   banned from trading forever, from working in the financial

4   field.  He has agreed to significant restitution and forfeiture

5   amounts, both over $30 million.  He agreed to the consent

6   preliminary order of forfeiture that was discussed by the Court

7   at the beginning of this proceeding.

8          So at bottom, your Honor, there is simply no way in

9   this case, even if the Court imposes a non-incarceratory

10  sentence, to say that Mr. Ackerman would not be punished

11  severely or has escaped punishment.

12         The fact is that there is no one on the planet that

13  would choose to be in Mr. Ackerman's situation right now.

14  Apart from his financial penalties, his medical condition is

15  such an extraordinary circumstance that Mr. Ackerman under any

16  analysis will have been punished beyond any appropriate

17  measure.  At this point he's in a fight to survive, it is that

18  dire, and so imprisoning him would be far more than any

19  sentencing factor can bear.

20         So under 3553(a), under any departure in the

21  guidelines, a non-incarceratory sentence is appropriate even

22  though, again, it's an exceptional sentence, but this is an

23  exceptional case.

24         And finally, your Honor, we asked in our submission

25  and asked today for a non-incarceratory sentence, which is a

M2FTACKS

1    broad term, and I think the Court got at why that was at the

2    beginning.  To the extent the Court wishes to impose probation

3    instead of supervised release, I think that makes a lot of

4    sense.  As your Honor indicated, the Court could place

5    Mr. Ackerman on supervision for longer than three years, it

6    could give a term, for example, of five years, and the Court

7    could have a whole host of sentencing options available to it

8    should Mr. Ackerman offend or violate in any way.  So that

9    would be a very kind of common sense, appropriate sentence

10   here.

11           We also talked about the possibility of house arrest.

12   I think for various physical reasons, electronic monitoring

13   might be difficult for Mr. Ackerman.  I think, frankly, his

14   body is in such rough shape, affixing or attaching anything to

15   him may not be helpful.  We would prefer home arrest or home

16   detention in this case.  The short of it is any sentence that

17   spares Mr. Ackerman from prison and the likely death sentence

18   that that would represent would be appropriate here.  So again,

19   a sentence of five years probation would make a lot of sense,

20   something along those lines.

21           Your Honor, there is a lot to say here.  I said a lot

22   in my sentencing submission.  I think the Court understands the

23   equities.  I'm happy to answer questions, but our position, in

24   accord with the probation office's position, is that

25   Mr. Ackerman frankly cannot and should not be imprisoned and

M2FTACKS

1    that anything short of that would be appropriate.

2              THE COURT:  Thank you, Mr. Marvinny.  And I have no

3    questions for you at this point.  You have been quite

4    comprehensive.

5              Ms. Greenwood?

6              MS. GREENWOOD:  Yes, your Honor.

7              So starting with the point that your Honor raised, I

8    think the government is certainly not disputing the nature and

9    severity of Mr. Ackerman's health condition.  I think we find

10   ourselves in the position where we either have a defendant who

11   can be incarcerated by the Bureau of Prisons, and based on his

12   offense conduct should be incarcerated for a significant period

13   of time, or someone who can't be incarcerated by the Bureau of

14   Prisons and there needs to be some alternate arrangement there.

15             I'm not a doctor, your Honor, and we have done our

16   best to consult with the people that we can at the Bureau of

17   Prisons and have presented them with the sentencing submission

18   we received from Mr. Marvinny with the descriptions of

19   Mr. Ackerman's health conditions, and have been told that the

20   medical centers at the Bureau of Prisons can accommodate his

21   care.  And having little else to go on other than that, your

22   Honor, the government feels that with the Bureau of Prisons

23   being able to care for Mr. Ackerman that a significant

24   incarceratory sentence is warranted here.

25             The Court is well aware of the facts in this case,

M2FTACKS

1    which are set out in detail not only in the complaint but in

2    the plea allocution and in the government's sentencing

3    submission.  This was a calculated, years' long scheme by the

4    defendant to steal tens of millions of dollars from investors

5    that relied on his advice and on his technical know-how to

6    invest what for many of these investors was their life savings.

7           The government has recovered what will essentially be

8    pennies on the dollar for many of these victims, and the vast

9    majority of what we have been able to recover came from sources

10   other than the defendant.  And so the defendant, although he is

11   facing significant penalties in terms of a negotiated

12   restitution amount and a negotiated forfeiture amount, his

13   actual penalty to himself is very minimal.  He purchased

14   properties, real estate, directly with victim funds.  The

15   government is seizing those.  The government also seized

16   cryptocurrency accounts that were in his possession.  But the

17   defendant, by and large, had spent the money he stole from the

18   victims by the time the government was able to arrest him and

19   attempt to recoup the losses from his scheme.

20          As you can see from the victim impact statements, your

21   Honor, these are victims who have had their savings wiped out,

22   who had their trust significantly damaged as a result of this

23   defendant's conduct.  I understand the submission talks about

24   medical conditions the defendant claims to have suffered at the

25   time, and quite frankly, your Honor, those conditions did not

M2FTACKS

1    prevent him from personally benefiting to the tune of

2    approximately $9 million and facilitating losses closer to $37

3    million in total and using that money to buy luxury goods, to

4    fund travel, to purchase real estate.  None of those conditions

5    prevented him from not only enjoying the proceeds of his fraud

6    but engaging in a sophisticated fraud that involved consistent

7    lies and doctoring of materials that he provided to investors.

8         Quite frankly, your Honor, given the representation

9    that we received from the BOP about its ability to incarcerate

10   the defendant, the nature and seriousness of his conduct, and

11   again, quite frankly, the inability of the government to

12   approach any kind of meaningful recovery for the victims in

13   this case I think warrants an incarceratory sentence within the

14   guidelines.

15        THE COURT:  Thank you, Ms. Greenwood.

16        Mr. Ackerman, would you like to speak for yourself

17   before I decide on your sentence?

18        THE DEFENDANT:  Yes, your Honor.  I have a bunch of

19   notes written down, and I don't do so well with notes, so I may

20   miss some of what I was going to tell you, but at this point in

21   my life, I'm a broken man.  I have got no place to live.  I

22   have got no income.  Due to the sickness and due to the

23   situation, I have got no money at this point because everything

24   has been taken away.  I'm living on disability, which is $2,600

25   a month, and I really don't have what I will call a bright

M2FTACKS

1    future at this point.

2          And that's two pronged, because I'm fighting two

3    fights right now.  I'm fighting this fight -- this fight will

4    continue civilly, obviously, afterwards, and I will be involved

5    in that -- and the second fight is the fight for my life.  And

6    I don't make that statement lightly.  This disease that I have

7    is progressive.  It doesn't just stop.  It won't get better.

8    No matter how many vitamins or pills I take a day, it's not

9    going to get better.

10          The one thing I will say, and I said it from the

11    get-go, is I'm guilty.  I have never disputed that fact.  I

12    have never gone against that fact.  I have realized very

13    directly that crime doesn't pay, as it involves remorse, and I

14    have such an enormous amount of remorse for my ex partners,

15    James Seijas and Quan Tran.  I have ruined their trust, I have

16    ruined their ability to go out and raise money for other jobs

17    or other funds that they are involved in.  I caused them a

18    great deal of trouble.  Moreover, I have caused the investors a

19    great deal of trouble.  They looked up to me, they trusted me,

20    and I broke that trust.  And I, again, don't take that lightly

21    at all.

22          I guess the bottom line is I'm looking for leniency

23    from you.  My future is obviously in your hands now, and

24    whatever decision it is that you make is the decision that I

25    will have to live by.  But again, I do ask for leniency.  And I

M2FTACKS

1   hope this decision is easy for you to make and not a close

2   contest, and I thank you, your Honor.

3           THE COURT:  Thank you.

4           Is there anything further that you would want to say

5   about your understanding or perception of the impact that your

6   crime has had on the lives of the people who invested with you?

7           THE DEFENDANT:  Enormous.  And I said it before.  They

8   had trust in me.  They looked up to me.  They looked to me as

9   if I had the answers to their financial future.  And by

10  breaking or breaching that trust, it put them -- to wake up one

11  morning and be told you have been scammed and you get that pit

12  in your gut feeling, because you get -- that happened to me

13  before -- that pit in your stomach, that feeling of oh, my God,

14  I can't believe what I did.  You're embarrassed, you're

15  horrified, you're angry, you're upset, you don't know which

16  emotion to follow.

17          I could tell you from the heart that I know that I

18  impacted them in a huge, huge way.  And other than saying

19  sorry, saying I'm guilty, trying to assist the prosecutor with

20  gathering all these goods that were purchased, those are --

21  that's nothing else I can do.

22          I tried my best to come up with an answer that would

23  make me feel better, and the answer is I'm not going to feel

24  better.  I'm not going to feel better because what I did was

25  egregious and I deserve not to feel better.  I don't deserve a

M2FTACKS

break in terms of how I feel emotionally, because the investors

aren't going to have that feeling disappear anytime soon, and I

understand that.

THE COURT:  Thank you, Mr. Ackerman.

I am going to ask now that everyone just sit quietly

with me for a couple of minutes while I reflect on everything

that I have heard and make my decision as to the sentence,

which I will then explain and announce.

Mr. Marvinny, it looked for a moment as if you wanted

to say something more, is that the case?

MR. MARVINNY:  Not at this time, your Honor, thank

you.

THE COURT:  Thank you.  So everyone just sit quietly

with me for a couple of minutes here.

(Pause)

THE COURT:  Thank you for your patience.  I listened

to everything that has been said this morning.  I read all the

submissions and I adopt the factual recitations set forth in

the presentence report.

This Court has discretion, taking into account the

applicable statutory provisions in exercising its power under

Section 3553(a) of Title 18, to determine the particular

sentence to be imposed in each particular case.

The law requires the Court to consider a number of

specific factors and sentencing goals, including the nature and

M2FTACKS

circumstances of the offense, the defendant's history and

characteristics, the need for the sentence imposed to reflect

the seriousness of the offense, promote respect for the law,

and provide just punishment, deterrence, and protection of the

public, as well as the need for the sentence to provide for the

provision of medical care or other correctional treatment to

the defendant in the most effective manner.

         The Court considers the types of sentences that are

available, the provisions of the sentencing guidelines, the

need to avoid unwarranted disparities, and the need to provide

restitution to victims.  The law requires the Court to impose a

sentence that is sufficient but not greater than necessary to

comply with the statutory sentencing purposes.

         As to the sentencing guidelines, I conclude that the

applicable guideline offense level is 28, based on the

calculation set forth in the report, and that the applicable

Criminal History Category is I for the reasons set forth in the

report.  Accordingly, the advisory guideline range for a

custodial sentence is from 78 to 97 months of imprisonment, and

I have used the 2021 edition of the guidelines manual when

making these determinations.

         I have considered the question of whether there is an

appropriate basis for a departure from the advisory range

within the guidelines system, and specifically I have focused

on Section 5H1.4 of the guidelines, finding that Mr. Ackerman's

M2FTACKS

1   grave medical condition and treatment needs -- as will be

2   detailed in my remarks and as have been detailed in the

3   submissions and on the record today -- establish extraordinary

4   circumstances, making him so seriously infirm that a

5   non-custodial sentence, including home incarceration, will be

6   as effective as and more efficient than a custodial sentence in

7   addressing the statutory purposes of sentencing.

8           I have also considered carefully all --

9           Ms. Greenwood, are you having trouble hearing?  It

10  seems to me --

11          MS. GREENWOOD:  You cut out for a moment, your Honor,

12  but you're back.

13          THE COURT:  Okay.  Did you miss a lot of what I said

14  or --

15          MS. GREENWOOD:  I did not.  Sorry, I was flagging in

16  case it continued, but it's fine, thank you.

17          THE COURT:  All right.  Thank you for flagging.

18          (Interruption by court reporter)

19          THE COURT:  And so I went on to say I have also

20  considered all of the Section 3553(a) factors, which in

21  combination and weighed properly, indicate the necessity of a

22  variance downward from the advisory guidelines sentence, and

23  that is necessary to accomplish a sentence that is reasonable

24  within the meaning of the law, sufficient and no greater than

25  necessary to address the statutory purposes of sentencing.

M2FTACKS

1          That last remark was in addition to remarks I had made

2    while the sound apparently had cut out.  I will now address

3    directly some of the Section 3553(a) factors.

4          As to the nature and circumstances of the offense,

5    Mr. Ackerman's offense was vast in its financial impact and its

6    impact on the trust of the investors and the public.  It was

7    very serious indeed.  He served as chief trading officer and

8    one of three managers of a cryptocurrency investment club from

9    August of 2017 to December 2019.  His responsibilities included

10   personally controlling the primary trading account of the

11   enterprise and an online cryptocurrency account.  More than a

12   hundred member investors accumulated more than $30 million in

13   what they believed were investments that they believed were

14   being invested by this organization.

15         Mr. Ackerman lied about the investment of the money

16   and lied about returns on the money.  He lied to his partners.

17   He lied to the investors.  The lies to his partners were also

18   communicated to the investors, and people relied on these lies

19   in making further investments with him, some of them with their

20   life's savings with large portions of their accumulated wealth.

21   And as I said, it was to the tune of about $30 million from a

22   hundred people, so clearly very large investments by at least

23   some of those people.  And in the meantime, Mr. Ackerman, while

24   he was lying about investment returns, was withdrawing funds

25   from the account for his own benefit.

M2FTACKS

1          Mr. Ackerman stole a total of at least $9 million in

2     investor contributions and used those amounts to fund his

3     purchases of real estate, jewelry, vehicles, travel, and

4     personal security services.  As a result of his involvement in

5     this offense, he has been determined to be responsible for

6     guidelines computation purposes for a loss exceeding $25

7     million and up to $65 million as a bracket, affecting ten or

8     more victims.  Those are specific factors that go into the

9     sentencing guideline calculation.

10          Mr. Ackerman attributes his conduct to greed and to

11     impaired judgment stemming from substance abuse and mental

12     health problems.  He recognizes the impact of his breach of

13     trust on the investors.

14          As to his personal history and characteristics, we

15     have received information from his older brother about his

16     early life.  Mr. Ackerman is an educated man who was employed

17     for more than two decades in New York as a stock broker.  And

18     he became quite wealthy.  A longtime friend says Mr. Ackerman

19     was generous in fundraising for worthy causes and in mentorship

20     for new employees during that period, and specifically helped

21     the friend, who wrote about a low point in his life.

22          Mr. Ackerman began drinking in college and at some

23     point began to abuse alcohol.  This was a substance abuse

24     problem that led to the demise of his first marriage.  And

25     during this period of time, Mr. Ackerman's career opportunities

M2FTACKS

1    went far south, and he went from being a very successful

2    stockbroker to being a person whose skills had been superseded

3    by changes in the methods by which investments are traded and

4    technology.

5            He began engaging in this criminal conduct no later

6    than 2017 and also began using drugs in addition to alcohol.

7    The substance abuse problems led to either the onset of

8    physical disease or serious acceleration and deterioration of

9    liver and kidney disease.  His multi-medical ailments have left

10   him unable to care for himself and unable to stand unassisted,

11   and he now requires assistance with most tasks of daily living

12   and is awaiting liver and kidney transplants that are necessary

13   to give him more than a minimal prospect of continued life.  He

14   has been diagnosed as terminal.

15           His current wife, who has also been a longtime friend,

16   serves as his primary and full-time caretaker.  And because of

17   the multiple complex serious physical and mental health

18   problems from which he suffers, Mr. Ackerman is largely

19   confined to a wheelchair and requires 24-hour-a-day assistance.

20   Mrs. Ackerman has also written to the Court reiterating

21   Mr. Ackerman's expressions of remorse and stating that he is

22   tormented and remorseful for his criminal conduct, especially

23   because he hurt people who had been his friends.

24           Mr. Ackerman's treating professionals and expert

25   consultant detail his condition, the risks that he faces, even

M2FTACKS

1  if he is successful in obtaining transplants, and the

2  meticulous and complex post-transplant care that will be

3  necessary if he receives transplants.

4          This makes it clear that an extraordinary level of

5  personal care and attention to medical issues will be required.

6  Notwithstanding the BOP's general representations, conveyed

7  through the government's counsel, that the Bureau of Prisons

8  would be able to care for Mr. Ackerman, it is difficult if not

9  impossible to imagine that any Bureau of Prisons facility would

10 be able to support the necessary longterm post-operative

11 regimens or even be able to respond quickly to an opportunity

12 to take Mr. Ackerman to a location on short notice for

13 transplant surgery.

14         His preoperative condition is already one that

15 requires constant personal assistance and multiple complicated

16 invasive treatments each week.  He's been hospitalized on

17 approximately 20 occasions over the past two years, and the

18 submissions indicate that Mr. Ackerman's condition is terminal

19 without surgery and that his attending professionals have

20 concluded that his anticipated life expectancy is 12 months or

21 less.

22         He is also facing numerous civil and enforcement

23 proceedings as a result of his crimes.

24         The Court has considered the need for the sentence

25 imposed to promote respect for the law, provide just

M2FTACKS

1   punishment, afford adequate specific and general deterrence,

2   and to protect the public from further crimes by Mr. Ackerman.

3          The Court finds that the defense evidence as to

4   Mr. Ackerman's current condition establishes that his physical

5   condition likely makes him incapable of committing further

6   crimes, and that by achieving sobriety, he has separated

7   himself from a key factor in his criminal activity, making

8   specific deterrence a minor factor in the sentencing decision.

9          He suffers due to his medical condition, which is not

10  a result of his crimes but is a result of the conduct in which

11  he engaged in the years before and during his crime, and he has

12  agreed to forfeit the ill-gotten gains of his criminal business

13  and make tens of millions of dollars of restitution.  Although

14  it is unclear whether this will result in any significant

15  recoveries for victims, it is clear that he is a gravely ill

16  man who is and will be without financial resources to draw on

17  even for shelter.

18         These conditions are significantly punitive as a

19  practical matter.  The law also requires the Court to consider

20  the need to provide the defendant with medical care in the most

21  effective manner, and that is a need that is particularly acute

22  in this case given Mr. Ackerman's current and anticipated

23  short-term medical needs.  As the medical expert retained by

24  the defense attests, provision for those significant needs in

25  any custodial setting would quite likely compromise

M2FTACKS

1    Mr. Ackerman's health.  It would, moreover, impose a strain on

2    the staff of any facility to which Mr. Ackerman might be

3    designated.  The Bureau of Prisons' facilities are already

4    challenged by the pandemic and security issues as well.

5           The Court has deferred a final determination of the

6    victims' losses and appropriate restitution to the May 11,

7    2022, sentencing restitution hearing.

8           The Court has considered the need to avoid unwarranted

9    disparities and concludes that the particulars of this case

10   will not result in any unwarranted disparities.

11          Summing up, the Court concludes that, although

12   Mr. Ackerman's financial fraud was shockingly brazen and

13   deprived his victims of huge amounts of money, breaching their

14   trust and disrupting in a devastating fashion their lives, and

15   it cannot be excused or justified, his current perilous medical

16   situation makes a custodial sentence of any length greater than

17   necessary to address the statutory purposes of sentencing and

18   provides ground for a departure pursuant to Section 5H1.4 of

19   the sentencing guidelines.

20          Mr. Ackerman is unlikely to survive for very long, and

21   his ability to survive depends on regular invasive medical

22   procedures each week, unscrupulous maintenance for the

23   procedures and cleanliness of Mr. Ackerman's person and

24   surroundings.  He is not capable of performing key activities

25   of daily living on his own.  He needs transplants, which

M2FTACKS

1    require the ability to respond quickly to availability and

2    travel to undergo complex and dangerous proceedings on short

3    notice and complicated aftercare requiring constant and

4    intimate care.

5          The Court is persuaded there is a good chance that a

6    custodial sentence will likely compromise Mr. Ackerman's health

7    seriously and unreasonably and he likely would not survive a

8    custodial sentence in the advisory guideline range.  The

9    guidelines do not contemplate such results of sentencing for

10   this crime.

11         I also have considered Mr. Ackerman's lack of criminal

12   history and sincere remorse, and most importantly, his current

13   health circumstances and the need to provide him with medical

14   care in the most effective manner.  Therefore, both a downward

15   departure and a variance downward to a non-custodial sentence

16   are appropriate and necessary.  The non-custodial sentence that

17   I have in mind to impose in the context of his health

18   conditions will be more cost-efficient to the prison system

19   than a custodial sentence, and will be efficient as a means to

20   ensure just punishment, protection of the public, and respect

21   for the law.

22         The Court entered a consent order of forfeiture and

23   will incorporate that into the judgment.

24         I note that pursuant to Section 3561 of Title 18 of

25   the United States Code, the Court is authorized to impose a

M2FTACKS

1   term of probation for a felony of not less than one or more

2   than five years.

3          I will now state the sentence that I intend to impose.

4          Mr. Ackerman, it is the judgment of this Court that

5   you are to be sentenced to a five-year term of probation on

6   your single count of conviction.  The imposition of a term of

7   probation gives the Court the ability to impose a lengthier

8   supervisory period than would be available with a time-served

9   sentence followed by supervised release and provides an

10   opportunity to resentence Mr. Ackerman should he recover and

11   violate his conditions of probation.

12          The standard conditions of probation 1 through 11 and

13   13 as set forth in the sentencing guidelines manual will apply.

14   The probation department will explain these to you in detail.

15   They are written out specifically in the presentence report,

16   and I'm sure that Mr. Marvinny will have something to say to

17   you about them as well.

18          In addition, Mr. Ackerman, you will be subject to the

19   following mandatory conditions:  You must not commit another

20   federal, state or local crime.  You must not illegally possess

21   a controlled substance.  You must refrain from any unlawful use

22   of a controlled substance and submit to one drug testing within

23   15 days of placement on probation and at least two unscheduled

24   drug tests thereafter as directed by the probation office.  You

25   must cooperate in the collection of DNA as directed by the

M2FTACKS

1    authorities.

2            And you must also meet the following special

3    conditions:  You will be subject to home incarceration,

4    monitored by location monitoring technology at the discretion

5    of the probation officer for a period of twelve months, and you

6    must abide by all technology requirements.  Now I have left

7    this to the discretion of the probation officer in light of the

8    practical issues that your medical condition presents, and so

9    it will be decided in context whether there is an appropriate

10   monitoring technology that can be used, but in any event, you

11   are subject to home incarceration.  You must pay all or part of

12   the costs of participation in a location monitoring program as

13   directed by the probation officer in light of your financial

14   circumstances.

15           During the period of home incarceration, which is

16   twelve months, you are restricted to your residence at all

17   times except for medical, substance abuse disorder or mental

18   health treatment, attorney visits, Court appearances,

19   Court-ordered obligations or other similar activities

20   preapproved by your probation officer.  The home incarceration

21   will commence at a time specified by the probation officer.

22           You must also participate in an outpatient mental

23   health treatment program approved by the United States

24   probation office.

25           You must continue to take any prescribed medications

M2FTACKS

1    unless otherwise instructed by the health care provider, and

2    you must contribute to the costs of the services rendered based

3    on your ability to pay and the availability of third-party

4    payment.  The Court authorizes the release of available

5    psychological and psychiatric evaluations and reports,

6    including the presentence investigation report, to the health

7    care provider.

8         You must submit your person and any property,

9    residence, vehicle, papers, computer, other electronic

10    communication, data storage devices, cloud storage or media and

11    effects to a search by any United States probation officer and,

12    if needed, with the assistance of law enforcement.  The search

13    is to be conducted when there is reasonable suspicion

14    concerning violation of supervision or unlawful conduct by you,

15    the person being supervised.  Failing to submit to a search may

16    be grounds for revocation of probation.  You must warn any

17    other occupants that the premises may be subject to searches

18    pursuant to this condition, and any search must be conducted at

19    a reasonable time and in a reasonable manner.

20         You must not incur new credit charges or open

21    additional lines of credit without the approval of the

22    probation officer unless you are in compliance with the

23    installment payment schedule.  The probation officer will have

24    access to any requested financial information, and you will be

25    supervised by your district of residence.

1          I have scheduled a separate restitution hearing

2     pursuant to Section 3664(d)(5) of Title 18, at which time your

3     precise restitution obligations and the identity and

4     obligations to each victim will be determined.  But since we

5     are all here, I want to pronounce the repayment obligation on

6     the record, and I have sufficient information to do so.

7          I have considered Mr. Ackerman's financial

8     circumstances and the magnitude of his forfeiture and likely

9     restitution obligations.  I will order that the restitution be

10    paid in monthly installments of 20 percent of Mr. Ackerman's

11    gross earned income, so public benefits and gifts or loans from

12    family members and friends will not be subject to this

13    obligation.  It will be an obligation based on earnings, and so

14    it will be 20 percent of the gross earned income during the

15    period of probation and payable thereafter in accordance with

16    the provisions of restitution order that will be entered in

17    connection with the determination.

18         The requirement of interest payment on any imposed

19    restitution obligation is waived pursuant to Section

20    3612(f)(3)(A) of Title 18 in light of Mr. Ackerman's financial

21    situation and obligations.  And in light of Mr. Ackerman's

22    financial circumstances, and particularly the substantial

23    forfeiture owed and likely substantial restitution owed, I will

24    not impose a fine on Mr. Ackerman.

25         Mr. Ackerman, I will order that you pay to the United

M2FTACKS

1    States a special assessment of $100, which is payable

2    immediately.

3         You must inform the probation office of any change in

4    your financial circumstances and notify the United States

5    Attorney for this district within 30 days of any change of

6    mailing or residence address that occurs while any part of the

7    restitution obligations or special assessment remains unpaid.

8         I believe that this sentence is reasonable,

9    sufficient, appropriate and no greater than necessary to

10   satisfy the statutory purposes of sentencing, which include

11   punishment and deterrence.

12        Mr. Marvinny, do you know of any legal reason why the

13   sentence should not be imposed as stated?

14        MR. MARVINNY:  No.  I thank you, your Honor.  I do

15   have a request when you're ready to hear it, but there's no

16   reason that the sentence can't be imposed.

17        THE COURT:  Then I will ask Ms. Greenwood.

18        Ms. Greenwood, do you know of any legal reason why the

19   sentence should not be imposed as stated?

20        MS. GREENWOOD:  No, your Honor.

21        THE COURT:  The sentence as stated is imposed.

22        Mr. Marvinny, actually let me talk about appeal rights

23   before you make your request.

24        Mr. Ackerman, to the extent you have not given up your

25   right to appeal through your guilty plea, you have the right to

M2FTACKS

1    appeal this sentence.  If you are unable to pay the cost of an

2    appeal, you may apply for leave to appeal in forma pauperis.

3    At your request, the Clerk of Court will file a notice of

4    appeal for you.  Any notice of appeal must be filed within 14

5    days of the judgment of conviction, so be certain to speak with

6    Mr. Marvinny about your rights in this regard at the earliest

7    opportunity.

8              Mr. Marvinny?

9              MR. MARVINNY:  Thank you, your Honor.  I wanted to

10   ask, I believe Mr. Ackerman's probation conditions will include

11   travel restrictions to the district where he's residing, unless

12   I'm mistaken about that.

13             THE COURT:  That is normal.

14             MR. MARVINNY:  Yes, I think that's one of the standard

15   conditions.  So in light of that, your Honor, I would ask the

16   Court to include a condition that is identical to a condition

17   that the Court agreed to for Mr. Ackerman's pretrial release

18   pursuant to a bail modification request in September of 2020,

19   and the condition is that Mr. Ackerman is permitted to travel

20   to Madison, Wisconsin upon notification that he is to receive

21   an organ transplant without application to the probation office

22   or the Court.

23             That is just in case Mr. Ackerman is notified last

24   minute that an organ is available in Wisconsin, I think he

25   should be able to travel there without permission from the

M2FTACKS

 1   Court, given that it will be a very time-sensitive situation.

 2   And as the Court is aware, this situation in fact occurred in

 3   July of 2021.  So we ask for that condition, please.

 4              THE COURT:  Ms. Greenwood, any objection?

 5              MS. GREENWOOD:  No, your Honor.

 6              THE COURT:  All right.  I will grant that as a

 7   modification to the -- I will make it a special condition so

 8   that it is flagged out.  And I'm just writing it down now since

 9   I don't have the earlier iteration of it right in front of me,

10   so give me just a moment.

11              Mr. Ackerman is permitted to travel to Madison,

12   Wisconsin upon notification that he is entitled to receive an

13   organ transplant without prior notice to the probation office.

14              Does that cover it?

15              MR. MARVINNY:  I think also without application to the

16   Court, because I believe the Court ultimately would be --

17              THE COURT:  So without application to the Court or

18   prior notice to the probation office.

19              MR. MARVINNY:  Yes, thank you, your Honor.

20              THE COURT:  I will include that.

21              Ms. Greenwood, are there any remaining counts or

22   underlying indictments that need to be addressed?

23              MS. GREENWOOD:  Yes, your Honor, the government moves

24   to dismiss the open counts against Mr. Ackerman.

25              THE COURT:  That application is granted.  And I would

M2FTACKS

1    just like to say a few more words.

2           Mr. Ackerman, if it were not for your serious health

3    conditions, it is very likely that your sentence today would

4    have included a very substantial term of imprisonment to

5    reflect the seriousness of your crime, which has done great

6    harm in the lives of others.

7           I urge you to think hard every day the rest of your

8    life about the potential consequences of your actions before

9    you take them so that the actions that you take will be

10   respectable, positive ones for yourself, for those who depend

11   on you, those who trust you, those who love you and for your

12   community, and will be ones consistent with the best care that

13   you can take of your health under the circumstances.

14          I recognize that you are gravely ill, and the sentence

15   that I imposed permits you to take maximum advantage of the

16   medical and transplant resources that are currently available

17   to you, and also permits you and your wife, who is your

18   dedicated caregiver, to remain together as you battle your

19   illnesses and cope with your many day-to-day needs.

20          You have expressed remorse, and through your attention

21   to achieving sobriety you have taken steps to remove yourself

22   from the circumstances in which you committed the appalling

23   fraud that has brought you before the Court today.

24          The letters that I have received tell me that you have

25   been a good influence in the lives of others, and I urge you to

M2FTACKS

1    do all that you can to be a positive contributor to the lives

2    of others for as long as you live.  You are loved and

3    appreciated, but those who are close to you, be a person of

4    whom your family and those who love you can always be proud,

5    and be an encouragement and good example to them as you

6    continue your efforts to preserve and improve your health and

7    live a law-abiding family life.  Do everything that is required

8    of you to provide recompense to your victims, and I wish you

9    improved health and I wish you and your family continued

10   strength.

11          The probation office has resources that can be helpful

12   to you, and the people who work in federal probation, my

13   colleagues in that function, are truly committed to helping you

14   succeed.  I must caution you that you have to comply strictly

15   with all of the conditions that I have set for your

16   probationary term.  If you violate any of those conditions, I

17   may resentence you to a period of imprisonment, so please don't

18   ever put me in a position of having to make that choice.

19          Thank you for listening, and I wish you strength and

20   courage and success in your efforts to treat your disease.

21          THE DEFENDANT:  Thank you, your Honor, I appreciate

22   your support.

23          THE COURT:  Thank you.

24          I thank counsel for their work, and I will direct that

25   a copy of the presentence report be prepared for the sentencing

M2FTACKS

1    commission.  All other copies of the report must remain

2    confidential, and if an appeal is taken, counsel on appeal are

3    to be permitted access to the report.

4            Mr. Marvinny, would you assist Mr. Ackerman in

5    reaching out to the probation department to make the

6    arrangements for the probationary supervision?

7            MR. MARVINNY:  Yes, your Honor, I will.

8            THE COURT:  Thank you.  Is there anything else that we

9    need to address together today, Mr. Marvinny?

10           MR. MARVINNY:  Nothing from us.  I thank the Court

11   very much.

12           THE COURT:  Is there anything further that we need to

13   address today together, Ms. Greenwood?

14           MS. GREENWOOD:  No, your Honor, thank you.

15           THE COURT:  Thank you all.  Thank you, Mr. Ackerman.

16   Keep safe and well, everyone.  We are adjourned.

17           (Adjourned)

18

19

20

21

22

23

24

25